## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| BILLY SINGLETON | * | |
| | * | **DOCKET NO.:** _____ |
| versus | * | |
| | * | |
| CMH MANUFACTURING, INC. | * | |
| | * | |
| **This case relates to LAED MDL NO. 07-1873** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff Billy Singleton complains of Defendant CMH Manufacturing, Inc., and, for cause of action, respectfully shows this Honorable Court the following:

### I.   PARTIES

1. Billy Singleton is a citizen of the State of Texas.

2. Defendant CMH Manufacturing, Inc. ("CMH") is a foreign corporation doing business in Texas.

### II.   JURISDICTION AND VENUE

3. Plaintiff alleges to have suffered damages in an amount in excess of $75,000.00, exclusive of interest and costs.

4. Pursuant to 28 U.S.C. §1332, this Court has subject matter jurisdiction over the claims asserted herein against the Defendant with citizenship other than that of Plaintiff, because of diversity of citizenship and because the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5. Pursuant to 28 U.S.C. §1367(a), this Court has subject matter jurisdiction over any claims, not otherwise subject to federal jurisdiction, based on the Court's supplemental jurisdiction over these claims.

6. CMH is subject to the in personam jurisdiction of this Court because it does sufficient business in the State of Texas and within this federal district to confer same, and at all relevant times hereto engaged in commerce both in this federal district and in the State of Texas with respect to the activities and claims which are the subject of this litigation.

7. The case is properly brought in this District and Division because CMH does business in this District and Division and is therefore subject in personam jurisdiction.

### III.   FACTS AND GENERAL ALLEGATIONS

8. Plaintiff resided or lived in a travel trailer, park model, or mobile home (hereinafter referred to as "housing unit") in the State of Texas that was provided by the United States Federal Government and/or its agencies, including, without limitation, the Federal Emergency Management Agency ("FEMA"), after the landfalls of Hurricane Katrina and/or Rita in or after September of 2005.

9. Of the housing unit at issue, "mobile homes" are generally wider than 8 feet and/or longer than 40 feet, for an average area greater than 320 square feet. They are designed to be used as permanent homes and are defined and regulated by the U.S. Department of Housing and Urban Development ("HUD"). *See* Center for Disease Control and Prevention, INTERIM FINDINGS ON FORMALDEHYDE LEVELS IN FEMA-SUPPLIED TRAVEL TRAILERS, PARK MODELS, AND MOBILE HOMES, Feb. 29, 2008, at 4, *available at* http://www.cdc.gov/Features/FEMAtrailersFindings/pdf/interim_findings.pdf.

10. Of the housing unit at issue, "travel trailers" are wheel-mounted and generally no larger than 8 feet wide and 40 feet long, for an average area of less than 320 square feet. They are designed to provide temporary living quarters and are generally considered vehicles, regulated by state transportation authorities rather than housing authorities. *Id.*

11. Of the housing unit at issue, "park models" are larger versions of travel trailers (up to 400 square feet in area). They are designed for temporary living quarters and, although they are manufactured housing, they are exempted from HUD construction standards, typically regulated by transportation authorities and by manufacturer acceptance of a Voluntary American National Standards Institute ("ANSI") standard applying to their construction. *Id.*

12. The residence of Plaintiff was rendered uninhabitable following Hurricanes Katrina and/or Rita, leaving plaintiff homeless and in need of housing assistance.

13. FEMA contracted with CMH to purchase thousands of the housing units for provision to Plaintiff, and individuals like her, as temporary housing.

14. On information and belief, CMH expedited production of these housing units, and, on information and belief, resorted to using substandard materials and/or employing irregular practices during the manufacturing process, all of which resulted in the housing unit occupied by Plaintiff containing higher than normal levels of formaldehyde.

15. On information and belief, Plaintiff's housing unit, regardless of whether or not it was manufactured prior to the hurricanes or later manufactured, and purchased by FEMA, deviated from Government specifications pertaining to the safety of the unit as a residence.

16. Plaintiff submits that the housing unit at issue herein, regardless of whether or not it was manufactured prior to the hurricanes or later manufactured, and purchased by FEMA, did not conform to any Government-imposed specifications which addressed the design and/or construction of the housing unit pertinent to formaldehyde levels.

17. Plaintiff submits that the housing unit at issue, regardless of whether or not it was manufactured prior to the hurricanes or later manufactured, and purchased by FEMA, contained dangerous levels of formaldehyde due to CMH's use of certain materials in their construction, and/or posed the threat of producing dangerous levels of formaldehyde due to the Federal Government's intended use of the housing units as temporary residences for at least 18 months, but that CMH failed to warn the Federal Government about these dangers, which initially were not known to the Federal Government.

18. Plaintiff submits that CMH ignored, or concealed and/or condoned the concealment of, the fact that the housing unit at issue contained dangerous levels of formaldehyde due to CMH's use of certain materials in their construction, and/or posed the threat of producing dangerous levels of formaldehyde due to the Federal Government's intended use of the housing units as temporary residences for at least 18 months, all in order to sell CMH's products, and/or avoid the costs of safety precautions/inspections, and/or avoid litigation by persons injured by formaldehyde emissions.

19. Plaintiff spent significant time in the FEMA-provided housing unit manufactured by CMH and provided to Plaintiff by the Federal Government.  As a result, Plaintiff unwittingly was exposed to dangerously high concentrations of the formaldehyde emitted from products used in the manufacture of the subject housing unit.

20. Formaldehyde is found in construction materials such as particle board, fiberboard and plywood, as well as glues and adhesives used in the manufacture of the housing units. Pursuant to federal law, the defendant is required to display a "Health Notice" about exposure to formaldehyde which reads:

> IMPORTANT HEALTH NOTICE
>
> Some of the building materials used in this home emit formaldehyde. Eye, nose and throat irritation, headache, nausea, and a variety of asthma-like symptoms, including shortness of breath, have been reported as a result of formaldehyde exposure. Elderly persons and young children, as well as anyone with a history of asthma, allergies, or lung problems, may be at greater risk. Research is continuing on the possible long-term effects of exposure to formaldehyde.
>
> Reduced ventilation resulting from energy efficiency standards may allow formaldehyde and other contaminants to accumulate in the indoor air. Additional ventilation to dilute the indoor air may be obtained from a passive or mechanical ventilation system offered by the manufacturer. Consult your dealer for information about the ventilation options offered with this home.
>
> High indoor temperatures and humidity raise formaldehyde levels. When a home is to be located in areas subject to extreme summer temperatures, an air-conditioning system can be used to control indoor temperature levels. Check the comfort cooling certificate to determine if this home has been equipped or designed for the installation of an air-conditioning system.
>
> If you have any questions regarding the health effects of formaldehyde, consult your doctor or local health department.

   *See* 24 C.F.R. §3280.309.

21. According to the National Cancer Institute, formaldehyde has been classified as a human carcinogen (cancer-causing substance) by the International Agency for Research on Cancer and as a probable human carcinogen by the U.S. Environmental Protection Agency ("EPA"). Additionally, the Agency for Toxic Substances and Disease Registry ("ATSDR") has reported to FEMA and members of Congress that not only is formaldehyde classified as "reasonably anticipated to be a human carcinogen," but also

that there is no recognized safe level of exposure, and that any level of exposure to formaldehyde may pose a cancer risk, regardless of duration.

22. Most published exposure standards for formaldehyde address protective levels for the adult working population in the workplace, based upon a 40-hour work week, and specifically do not address chronic exposure levels or protective levels for the more susceptible population, for instance, the very young, the elderly and those with respiratory, skin and other chronic diseases.  Nonetheless, reference to the levels established by the Occupational Safety and Health Administration ("OSHA") evidences formaldehyde's harmful effects.  In 1987, OSHA reduced the amount of formaldehyde to which workers can be exposed over an 8-hour day from 3 ppm to 1 ppm.  In May, 1992, the formaldehyde exposure limit was further reduced to .75 ppm.

23. HUD regulates formaldehyde levels in certain construction materials to include the pressed wood products used in manufactured housing (such as prefabricated mobile homes).  HUD has far stricter exposure limits for residential formaldehyde emissions.  By regulation, "All plywood and particle board materials bonded with a resin system or coated with a surface finish containing formaldehyde shall not exceed the following formaldehyde emission levels when installed in manufactured homes: (1) Plywood materials shall not emit formaldehyde in excess of 0.2 parts per million (ppm) ... [and] (2) Particle board materials shall not emit formaldehyde in excess of 0.3 ppm...."  *See* 24 C.F.R. §3280.308.

24. Both the EPA and the ATSDR have suggested values for safe formaldehyde exposure, which are reproduced below, which values are applicable herein since the FEMA

trailers/housing units at issue were intended to be occupied for up to a year and a half by evacuees. *See* 44 C.F.R. § 206.110(e).

| Agency | Standard |
|---|---|
| EPA recognized level at which acute health problems can manifest | 0.1 parts per million (ppm) |
| Agency for Toxic Substances and Disease Registry Minimum Risk Levels (MRL) | 0.04 ppm – short exposure up to 14 days |
|  | 0.03 ppm – exposure durations between 15 and 364 days |
|  | 0.008 ppm – exposure of 365 days or greater |

*See* Union of Concerned Scientists, Citizens and Scientists for Environmental Solutions, *FEMA Exposes Gulf Coast Residents to Formaldehyde*, Updated on Dec 19, 2007, available at http://www.ucsusa.org/scientific_integrity/interference/fema-trailers.html.

25. CMH knew or should have known of the health hazards inherent in the products it constructed, by familiarity with industry standards, the material safety data sheets in its possession, and published medical studies.

## COUNT 1:
## THE TEXAS PRODUCTS LIABILITY ACT

26. Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth fully below.

27. CMH, at all relevant times, was in the business of designing and manufacturing the subject housing unit for commercial gain and placed the housing unit in the stream of commerce.

28. The housing unit contained design, manufacturing and/or marketing defects at the time the housing unit left CMH's possession and/or control.

29. Those defects caused the housing unit to be unreasonably dangerous and such defects were a producing cause of Plaintiff's damages.

30. The design of the housing unit, using plywood, press board, other composite wood products and other products that contain formaldehyde is defective and posed an unreasonable risk of harm to Plaintiff.

31. Further, the use of plywood, press board, other composite wood products and other products that contain formaldehyde constitutes a defect in composition or manufacture that posed an unreasonable risk of harm to Plaintiff.

32. Additionally, CMH failed to adequately warn Plaintiff, the end user of the product, of the dangers associated with formaldehyde exposure, the risk of exposure to formaldehyde by using such products, and the means to mitigate such risks, which constitute a marketing defect.

33. The defects in CMH's housing unit is the result of and/or include, but are not limited to, the following:

    a. Inherent characteristics, known to CMH which gave each product such a potential for causing health problems as to render the product unreasonable *per se*;

    b. Lack of warnings or lack of sufficient warnings of the inherently dangerous properties of each product when used in the fashion for which they were anticipated or should have been anticipated being used;

    c. Lack of instructions or lack of sufficient instructions for eliminating or minimizing the health risks inherent in the use of the product;

    d. Lack of sufficient inspections by CMH of its product to ensure that each product contained sufficient warnings of the dangerous properties of the products;

    e. Lack of reasonable inspections by CMH of its products to ensure that each product contained sufficient instructions for eliminating or minimizing the health risks inherent in the use of the product;

    f. Lack of testing or lack of sufficient tests to determine the effects and/or the risks of formaldehyde fumes on intended users of each product or their guests; and

    g. Defective designs calling for the inclusion of materials which included formaldehyde, when equally suitable materials which did not contain formaldehyde were available, would have prevented or significantly reduced the risk of Plaintiff's damages without substantially impairing the product's utility, and which were economically and technologically feasible at the time each product left CMH's control.

34. The defects in the housing units rendered each product unreasonably dangerous and each defect was a producing cause of Plaintiff's damages, as set forth herein. Plaintiff's damages resulted from the normal, foreseeable, and intended use of the product and equipment, without substantial alteration, in the condition in which CMH sold the housing unit, or in which it left CMH's control.

35. Plaintiff was an intended and foreseeable user of the housing unit, and damages and losses to Plaintiff through normal, foreseeable and intended use of the product, could reasonably be anticipated by CMH.

36. If CMH claims that the housing unit is governed by any local, state or federal government's procedures, regulations or requirements for building or marketing the housing units, then Plaintiff would show that:

    a. CMH did not follow such procedures, regulations or requirements and that the housing unit did not and does not comply with such procedures, regulations or requirements;

    b. Even if such procedures, regulations or requirements apply, and even if CMH built and manufactured the housing units according to such procedures, regulations or requirements, then the housing unit still contains manufacturing flaws or defects; and/or

    c. Any such safety standards, regulations or requirements are or were inadequate to protect the public from unreasonable risks of injury or damage caused by the housing unit(s); and/or

    d. CMH withheld or misrepresented information or material relevant to the government's or agency's determination of adequacy of the safety standards or regulations at issue in this lawsuit.

## COUNT 2:
## NEGLIGENCE

37. Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth fully below.

38. At all times material, CMH was the designer, marketer, manufacturer, distributor, and/or seller of the housing unit, which have caused Plaintiff's injuries.

39. CMH owed a duty to Plaintiff to provide a safe housing unit that did not emit unsafe levels of formaldehyde.

40. CMH knew or should have known that when it provided the housing unit to the general public or directly to FEMA that the housing unit would be used in the manner that Plaintiff used the housing unit.

41. CMH breached its duty to Plaintiff in failing to act reasonably in the design, marketing, distribution and sale of the housing unit; specifically by:

   a. Failing to provide any/or sufficient warnings regarding the inherently dangerous properties of the housing unit when used in the fashion for which it was anticipated or should have been anticipated being used;

   b. Failing to provide any/or sufficient instructions for eliminating or minimizing the health risks inherent in the use of the housing unit, in particular, the risk of the exposure to formaldehyde;

   c. Failing to adequately and properly inspect the housing unit to ensure that the housing unit contained sufficient warnings of the dangerous properties of the product, in particular, the risk of the exposure to formaldehyde;

   d. Failing to adequately and properly inspect the housing unit to ensure that the product contained sufficient instructions for eliminating or minimizing the health risks inherent in the use of the product, in particular, the risk of the exposure to formaldehyde;

   e. Failing to test or lack of sufficient tests to determine the effects and/or the risks of formaldehyde fumes on intended user(s) of the housing unit or their guests;

   f. Failing to properly design the housing unit, including inappropriate designs calling for the inclusion of materials which included formaldehyde, when equally suitable materials which did not contain formaldehyde were available, which would have prevented or significantly reduced the risk of Plaintiff's damages without substantially impairing the housing unit's utility, and which were

economically and technologically feasible at the time the housing unit left CMH's control;

g. Failing to properly manufacture the housing unit by incorporating materials in the housing unit which included formaldehyde, when equally suitable materials which did not contain formaldehyde were available, which would have prevented or significantly reduced the risk of Plaintiff's damages without substantially impairing the housing unit's utility, and which were economically and technologically feasible at the time the housing unit left CMH's control; and

h. Failing to disclose to FEMA and/or Plaintiff that the housing unit emitted formaldehyde fumes and that such fumes caused health problems, despite the fact that CMH knew of the dangers of formaldehyde exposure and the emission of formaldehyde from the housing unit.

42. CMH's breaches were a proximate, direct and/or producing cause of Plaintiff's damages, as set forth herein.

## COUNT 3:
## BREACH OF IMPLIED WARRANTY

43. Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth fully below.

44. At times material herein, CMH impliedly warranted that the housing unit was made in a good and workmanlike manner, and would be merchantable and habitable, and was fit for its intended purpose as safe and compliant housing unit to be used, among other things, to house Plaintiff.

45. As set forth herein, the housing unit was not fit for its intended purpose as a safe and compliant housing unit for Plaintiff.

46. Therefore, CMH breached these warranties.

47. Plaintiff has notified CMH of this breach, or has been unable to do so because the housing unit has been removed.

48. As set forth herein, CMH's conduct was a producing cause of Plaintiff's damages incurred and set forth herein.

## COMPENSATORY DAMAGES

49. In addition to and by way of summarizing the compensatory damages prayed for herein, Plaintiff avers that CMH is responsible for all damages which Plaintiff herein has suffered and continues to suffer as a consequence of CMH's acts and/or omissions as pled herein, which damages include, but are not limited to, past and future physical injuries, past and future mental and physical pain and suffering, past and future physical impairments and disability, past and future reasonable and necessary medical expenses, past and future loss of earning capacity, past and future loss of enjoyment and quality of life and other damages and injuries, loss of consortium, and loss of use and/or opportunity to use safe and adequate shelter during the period of displacement from a natural disaster, as well as, all general, special, incidental and consequential damages as shall be proven at the time of trial.

## PUNITIVE DAMAGES

50. Under the laws of the State of Texas, as Plaintiff is seeking relief under the statutory provisions set forth herein, Plaintiff is also entitled to awards for punitive damages as are appropriate and necessary under these facts.

## REQUEST FOR JURY TRIAL

Each Named Plaintiff is entitled to and demands a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that CMH be served with a copy of this Complaint, and that, after due proceedings:

1. There be a judgment herein in favor of Plaintiff and against CMH for all compensatory damages together will legal interest thereon from the date of judicial demand until paid, all costs and expenses of these proceedings, and attorneys' fees, declaring that the defendant is liable for all applicable damages and thereafter;

2. There be specially included in the judgment in Plaintiffs' favor, provisions for the following damages and relief as found applicable and supported by the evidence:

    a. past and future physical injuries,

    b. past and future mental and physical pain and suffering,

    c. past and future physical impairments and disability,

    d. past and future reasonable and necessary medical expenses,

    e. past and future loss of earning capacity,

    f. past and future loss of enjoyment and quality of life,

    g. loss of consortium and/or society,

    h. compensable out-of-pocket expenses related to defendant's wrongdoing,

    i. costs of court, and

    j. punitive damages,

3. All other general, equitable, and further relief as the Court may deem just and proper.

Respectfully submitted,

**THE BUZBEE LAW FIRM**

 /s/ *Anthony G. Buzbee*
Anthony G. Buzbee
Texas Bar No. 24001820
JPMorgan Chase Tower
600 Travis Street, Suite 7300
Houston, Texas 77002
Tel.:    (713) 223-5393
Fax.:   (713) 223-5909
www.txattorneys.com

OF COUNSEL:
**THE BUZBEE LAW FIRM**
Peter K. Taaffe
Texas Bar No. 24003029